IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| **ADVANCED FITNESS CONCEPTS, INC. d/b/a VULCAN STRENGTH TRAINING SYSTEMS,** <br> Plaintiffs, <br> v. <br> **COULTER VENTURES, LLC d/b/a ROGUE FITNESS,** <br> Defendant. | Civil Action No. 3:23-cv-46 <br><br> **COMPLAINT** <br><br> Jury trial demanded |

Plaintiff Advanced Fitness Concepts, Inc. d/b/a Vulcan Strength Training Systems ("Vulcan" or "Plaintiff"), by and through its undersigned counsel, for its Complaint against Defendant Coulter Ventures, LLC d/b/a Rogue Fitness ("Rogue" or "Defendant"), alleges and states as follows:

**Nature of the Action**

1. This is an action for monetary and injunctive relief based on Defendant's trade dress infringement and unfair competition in violation of federal and state law. Plaintiff Vulcan designs and sells Olympic weightlifting equipment, as well as other fitness equipment. One of its most successful products is its line of ALPHA weight plates, which bear a federally-registered trade dress consisting of an arbitrary, distinctive, and highly recognizable pattern of flecks or blotches in various colors. Defendant Rogue, a direct competitor of Vulcan in the sale of strength training equipment, has launched its own line of "Rogue Fleck Plates" which closely emulate Vulcan's registered and distinctive trade dress. The commercial impression made by the "Rogue Fleck Plates" is such that consumers are likely to believe that Rogue's products are in

fact Vulcan's highly-regarded ALPHA products, or are produced, sponsored, or approved by Vulcan as the source of the ALPHA products and their well-known trade dress.  Vulcan brings this action to halt Rogue's ongoing infringement and unfair competition, and for appropriate monetary relief.

**Parties**

2. Plaintiff Advanced Fitness Concepts, Inc. is a North Carolina corporation in good standing, with its principal place of business located in Charlotte, North Carolina.  Plaintiff does business under the trade name "Vulcan Strength Training Systems."

3. Defendant Coulter Ventures, LLC is, upon information and belief, a limited liability company organized under the laws of the State of Ohio, with its principal place of business located in Columbus, Ohio.  Defendant does business under the trade name "Rogue Fitness."

**Jurisdiction and Venue**

4. This Court has subject matter jurisdiction over the federal claims in this case pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338, in that they arise under Sections 32 and 43 of the Lanham Act, 15 U.S.C. §§ 1114 and 1125.  This Court has subject matter jurisdiction over the state claims in this case (i) pursuant to 28 U.S.C. § 1338(b), in that they are claims of unfair competition joined with substantial and related claims under the federal trademark laws; (ii) pursuant to 28 U.S.C. § 1332, in that this action is between citizens of different States and the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs; and (iii) pursuant to 28 U.S.C. § 1367(a) and the principles of supplemental jurisdiction.

5. This Court may properly exercise personal jurisdiction over Defendant Rogue because, upon information and belief, Rogue advertises, offers for sale and sells products, including specifically the infringing products complained of herein, in the State of North Carolina and this judicial district, as further alleged below.

6. Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because Rogue resides in this district within the meaning of 28 U.S.C. § 1391(c).

## Facts Common To All Claims

### Vulcan and Its Products

7. Vulcan, founded in 2008, is a 100% veteran owned company and is registered as a Small Disadvantaged Business with the U.S. Small Business Administration pursuant to 13 CFR 124. Vulcan designs and sells Olympic-class weightlifting equipment, cross-training equipment, home gym equipment, and commercial gym fitness equipment.

8. Vulcan's market strategy is to offer innovative products of the highest quality. It regularly develops and introduces new and inventive products and product improvements to respond to the rapidly evolving needs in strength training.

9. Weight plates are an important category of weightlifting equipment. They are circular disks with a central hole to allow them to be affixed to a barbell. Plates of different weights can be added to or removed from the bar to adjust the weight being lifted.

10. For many years weight plates were made of iron or steel, but these had known disadvantages. Many lifts, especially Olympic lifts such as the snatch or the clean and jerk, require the final position of the weight to be overhead, following which the weight is dropped to the floor. When dropped from such a height, iron or steel plates can cause significant wear and tear to flooring surfaces and to the plates and bar.

3

11. These disadvantages led to the development of bumper plates, so called because they are covered in hard rubber and are designed to bounce, or "bump," when dropped, thereby consuming energy from the drop and reducing wear or damage to the floor, the plates, and the bar. Bumper plates therefore have significant advantages over traditional iron or steel plates in terms of durability and safety, and have become the preferred equipment for Olympic lifting as well as cross-training, commercial gyms, and home equipment.

12. Innovations in materials and fabrication processes continue to improve the performance of bumper plates by increasing durability and energy absorption while minimizing bounce. Vulcan was the first company in the U.S. market to introduce the technology of using a forged steel insert in a bumper plate with "anchors" that, together with a special adhesive compound, permanently bind the steel insert to the rubber. Vulcan bumper plates made with this technology are mechanically drop tested for 30,000 drops, significantly more than bumper plates made with traditional pressed-in steel inserts.

**Vulcan's ALPHA bumper plates**

13. In 2015, Vulcan introduced a new line of bumper plates known as ALPHA plates. These use an innovative and patented rubber compound exclusive to Vulcan that offers significant advantages over the recycled rubber or crumb rubber that are typically used on other bumper plates in the market.

14. ALPHA plates offer a lower bounce, reducing the risk of injury to the lifter, and make approximately 25% less noise when dropped from overhead, an important benefit because lifters have reported hearing loss due to the noise of drops in a crowded gym.

15. ALPHA plates also give off much less odor, and because of their enhanced durability they can be used outdoors and dropped on asphalt without damage, unlike bumper plates made with traditional rubbers.

16. The superior quality of the rubber also allows ALPHA plates to be thinner than other plates of the same weight, so that they fit tighter together on the bar and produce less vibration and wobbling when lifted.

17. Vulcan invested hundreds of hours in developing, selecting, and designing its ALPHA bumper plate line.

**The ALPHA Trade Dress**

18. In bringing its ALPHA product to market, Vulcan sought a means to symbolize to the consuming public the distinctive and innovative nature of the product. It therefore adopted a unique flecked or blotched pattern ("the ALPHA Trade Dress") to be displayed on the body of the plate, as follows:



19. The colors on the ALPHA bumper plates are standardized by the International Weightlifting Federation to designate specific weights, red for 25 kg (approximately 55 lbs.), blue for 20 kg (approximately 45 lbs.), and so on. Many other aspects of the product appearance are also standardized, such as the circular shape, the diameter, and the dimensions of the central

hole. For this reason, the distinctive pattern of the ALPHA Trade Dress is one of only a few brand communicators available to distinguish the product, and is an important means by which consumers and users are able instantly to identify Vulcan's ALPHA plates and distinguish them from bumper plates made by other companies.

20. While other manufacturers offer bumper plates in various colors, at the time of introduction of the ALPHA plates in 2015 no other manufacturer had offered bumper plates displaying a pattern like the ALPHA Trade Dress or any confusingly similar design.

21. Since their introduction, Vulcan has extensively advertised and promoted its ALPHA bumper plates through its internet web site, print and online advertisements, social media pages, events and trade shows, email marketing, and affiliate marketing. All of this media prominently depicts and features the ALPHA Trade Dress, as shown in the following example:



22. Since 2015, Vulcan has spent over one million dollars in advertising its ALPHA bumper plates featuring the ALPHA Trade Dress.

23. From the time of its introduction, the ALPHA line of bumper plates with the distinctive ALPHA Trade Dress has been very successful and well-received by the consuming public. Vulcan has sold millions of dollars of ALPHA plates, and the line has received overwhelmingly favorable reviews in the fitness media and in posted customer comments.

24. The fanciful and arbitrary ALPHA Trade Dress quickly became well-known and widely recognized among the consuming public. The distinctive commercial impression made by the ALPHA Trade Dress is a principal means by which consumers identify Vulcan's ALPHA products and distinguish them from those of others.

25. Vulcan is the owner of U.S. Trademark Registration No. 6,128,323 for the ALPHA Trade Dress as depicted below:



Color is not claimed as a feature of the mark, and the dotted lines indicate only placement of the mark on the goods and are not part of the mark. The registration is for use of the mark on and in connection with "exercise weights, namely, bumper plates; exercise weights, namely, weight plates" in International Class 28.

26. Vulcan's Registration No. 6,128,323 issued August 18, 2020, and is valid, subsisting, and uncancelled. Pursuant to Lanham Act Section 33, 15 U.S.C. § 1115, it provides prima facie evidence of the validity and distinctiveness of the ALPHA Trade Dress, and of Vulcan's exclusive right to use it in commerce on or in connection with the goods described. A print of the official record of the registration from the USPTO's online TESS database is attached as Exhibit A.

27. The ALPHA Trade Dress enjoys an exceedingly valuable reputation, goodwill, and trust among consumers, and Vulcan has sought continuously to protect the rights and goodwill and trust associated with it.

**Defendant Rogue's Infringing Product**

28. Defendant Rogue is a large seller of strength and conditioning equipment in direct competition with Vulcan.

29. In online media, Rogue claims to be the largest seller of strength and conditioning equipment in the world.

30. Upon information and belief, Rogue's annual sales are well in excess of $100,000,000 (One Hundred Million Dollars).

31. At a precise time unknown to Vulcan but in any event long after the introduction and commercial success of Vulcan's ALPHA bumper plates featuring the ALPHA Trade Dress, Rogue introduced a new line of bumper plates it calls "Rogue Fleck Plates."

32. The Rogue Fleck Plates display a close simulation of Vulcan's distinctive and registered ALPHA Trade Dress, as shown below:



33. When viewed from the side (as they often are when racked or when in use on a barbell), the Rogue Fleck Plates are indistinguishable from Vulcan's ALPHA plates:

8



34. Notwithstanding the presence of the Rogue name on the face of the Rogue Fleck Plates, the total commercial impression created by the Rogue Fleck Plates is so similar to the ALPHA Trade Dress that it is likely to cause confusion and mistake and to deceive the consuming public as to the source, origin or sponsorship of Rogue's goods. Actual and potential customers are likely to believe, and do believe, that the "Rogue Fleck Plates" are Vulcan's ALPHA bumper plates, or are made by the same manufacturer or come from the same source as Vulcan's ALPHA bumper plates, or that "Rogue Fleck Plates" are licensed by, sponsored by, or approved by the maker of the ALPHA plates featuring the ALPHA Trade Dress, or that there is some affiliation or connection between the two companies.

35. Upon information and belief, at some point after the introduction and commercial success of Vulcan's ALPHA bumper plates, Rogue contacted Vulcan's contract manufacturer and unsuccessfully attempted to persuade it to make bumper plates for Rogue bearing the ALPHA Trade Dress.

36. Upon information and belief, Rogue was well aware of Vulcan's ALPHA line, of its commercial success, and of the consumer recognition and goodwill represented by the ALPHA Trade Dress at the time it designed and introduced its "Rogue Fleck Plates."

9

37. The "Rogue Fleck Plates" are marketed, advertised, and sold through the same channels of trade as Vulcan's ALPHA bumper plates featuring the ALPHA Trade Dress.

38. The "Rogue Fleck Plates" are marketed, advertised, and sold to the same classes of customers as Vulcan's ALPHA bumper plates featuring the ALPHA Trade Dress.

39. Upon information and belief, Rogue has advertised, sold, and shipped its infringing "Rogue Fleck Plates" to customers located in North Carolina and specifically in this judicial district.

40. Upon information and belief, Rogue intentionally copied Vulcan's ALPHA Trade Dress to associate its "Rogue Fleck Plates" with Vulcan's ALPHA plates in the minds of the consuming public, and in order to create and benefit from confusion with Vulcan's prior and superior product bearing the ALPHA Trade Dress.

41. Rogue's calculated infringement of the ALPHA Trade Dress has achieved its intended effect, in that it has caused and is causing actual confusion among actual or potential customers in the marketplace. Vulcan has received phone calls from customers confusing Rogue's infringing "Rogue Fleck Plates" with Vulcan's ALPHA bumper plates, and consumer posts on social media reflect source confusion caused specifically by the appearance of the "Rogue Fleck Plates."

42. Rogue has adopted and is intentionally using the appearance of the "Rogue Fleck Plates" to trade upon the reputation and goodwill and consumer trust associated with Vulcan's ALPHA Trade Dress, and to give Rogue's goods a customer appeal and salability which they would not otherwise have in the absence of the confusing similarity to the ALPHA Trade Dress.

## FIRST CLAIM FOR RELIEF
### (Infringement of Registered Trademark – Lanham Act § 32, 15 U.S.C. § 1114))

43. The allegations of paragraphs 1 through 42, above, are incorporated by this reference.

44. Rogue's conduct as above alleged constitutes infringement in violation of Lanham Act § 32, 15 U.S.C. §1114, in that the appearance of its "Rogue Fleck Plates" is likely to cause confusion, or to cause mistake, or to deceive actual and prospective purchasers into believing that the "Rogue Fleck Plates" originate from Vulcan or from the same source as Vulcan's ALPHA plates bearing the ALPHA Trade Dress, or are authorized, sponsored, or approved by Vulcan, or that there is some affiliation or connection between the two entities.

45. As a direct and proximate result of Rogue's conduct as alleged above, Vulcan has suffered harm and damage, in that it has lost and is continuing to lose sales and profits that it otherwise would have earned, and its reputation with consumers and the trade has been impaired and damaged. The amount of Vulcan's damages is not reasonably capable of precise assessment at present, but will be proved with specificity at trial.

46. Rogue's conduct as above alleged is ongoing, and will cause continuing, escalating, and irreparable damage to Vulcan's business and reputation unless and until Rogue is enjoined by this Court.

## SECOND CLAIM FOR RELIEF
### (False Designation of Origin – Lanham Act § 43(a), 15 U.S.C. § 1125(a))

47. The allegations of paragraphs 1 through 46, above, are incorporated by this reference.

48. Rogue's conduct as above alleged constitutes false designation of origin in violation of Lanham Act § 43(a), 15 U.S.C. § 1125(a), in that purchasers and consumers are

likely to believe based on their appearance that the "Rogue Fleck Plates" are Vulcan's ALPHA plates bearing the ALPHA Trade Dress, or originate from Vulcan as the maker of ALPHA bumper plates, or that Rogue's "Rogue Fleck Plates" are licensed by, sponsored by or approved by the maker of ALPHA bumper plates, or that there is some affiliation or connection between the two companies.

49. As a direct and proximate result of Rogue's conduct as alleged above, Vulcan has suffered harm and damage, in that it has lost and is continuing to lose sales and profits that it otherwise would have earned, and its reputation with consumers and the trade has been impaired and damaged. The amount of Vulcan's damages is not reasonably capable of precise assessment at present, but will be proved with specificity at trial.

50. Rogue's conduct as above alleged is ongoing, and will cause continuing, escalating and irreparable damage to Vulcan's business and reputation unless and until Rogue is enjoined by this Court.

### THIRD CLAIM FOR RELIEF
**(Common Law Trademark Infringement and Unfair Competition)**

51. The allegations of paragraphs 1 through 50, above, are incorporated by this reference.

52. Rogue's conduct as above alleged constitutes trademark infringement and unfair methods of competition in violation of the common law of the State of North Carolina.

53. As a direct and proximate result of Rogue's conduct as alleged above, Vulcan has suffered harm and damage, in that it has lost and is continuing to lose sales and profits that it otherwise would have earned, and its reputation with consumers and the trade has been impaired and damaged. The amount of Vulcan's damages is not reasonably capable of precise assessment at present, but exceeds $75,000, and will be proved with specificity at trial.

54. Rogue's conduct as above alleged is ongoing, and will cause continuing, escalating and irreparable damage to Vulcan's business and reputation unless and until Rogue is enjoined by this Court.

55. Rogue knew or should have known that its conduct was reasonably likely to result in injury, damage, or other harm, thus warranting the award of punitive damages.

## FOURTH CLAIM FOR RELIEF
### (Unfair And Deceptive Trade Practices – N.C. Gen. Stat. §75-1.1)

56. The allegations of paragraphs 1 through 55, above, are incorporated by this reference.

57. Rogue's conduct as above alleged was and is in commerce and affects commerce in the State of North Carolina.

58. Rogue's conduct as above alleged constitutes unfair and deceptive acts and practices and unfair methods of competition in violation of the provisions of N.C. Gen. Stat. §75-1.1, *et seq.*

59. As a direct and proximate result of Rogue's conduct as alleged above, Vulcan has suffered harm and damage, in that it has lost and is continuing to lose sales and profits that it otherwise would have earned, and its reputation with consumers and the trade has been impaired and damaged. The amount of Vulcan's damages is not reasonably capable of precise assessment at present, but exceeds $75,000, and will be proved with specificity at trial.

60. Rogue's conduct as above alleged is ongoing, and will cause continuing, escalating and irreparable damage to Vulcan's business and reputation unless and until Rogue is enjoined by this Court.

13

61. Rogue has willfully engaged in the unfair methods of competition and unfair and deceptive acts and practices alleged above, warranting the award of attorneys' fees to Vulcan pursuant to N.C. Gen. Stat. §75-16.

**PRAYER FOR RELIEF**

WHEREFORE, Vulcan prays that the Court enter judgment in its favor and against Rogue as follows:

1. That this Court issue a preliminary injunction and permanent injunction enjoining Rogue, its directors, officers, employees, representatives and agents, and any persons or entities in active concert or participation with them, from advertising, offering for sale, and selling the "Rogue Fleck Plates," or any other product having a trade dress that is confusingly similar to Vulcan's ALPHA Trade Dress, such an injunction to include an order requiring Rogue to recall all such infringing products from the marketplace;

2. That Rogue be ordered to cause all of its inventory, equipment, signage, advertising, labels, promotional materials, and other materials exposed to the consuming public or the trade in any form consisting of or depicting the "Rogue Fleck Plates" or any other product having a trade dress that is confusingly similar to Vulcan's ALPHA Trade Dress to be destroyed or delivered up to the Court for destruction;

3. That Rogue be ordered to undertake, or to compensate Vulcan for the cost of, corrective advertising and other corrective measures reasonably calculated to attempt to mitigate the confusion engendered by Rogue's infringing conduct;

4. That Rogue be ordered to account for all revenues, and other economic benefits and advantages, derived from the sale of the "Rogue Fleck Plates" or any other product having a trade dress that is confusingly similar to Vulcan's ALPHA Trade Dress;

5. That Rogue be ordered to file with the Court and serve upon Plaintiffs' counsel a written report under oath within thirty (30) days after service of notice of entry of judgment or issuance of an injunction pursuant thereto, setting forth details of the manner in which Rogue has complied with the Court's order pursuant to paragraphs 1 through 4 above.

6. That Vulcan have and recover of Rogue its actual damages sustained by reason of Rogue's acts of infringement in violation of Lanham Act §§ 32 and 43(a), 15 U.S.C. §§ 1114 and 1125(a), in such amounts as may be proved at trial, such damages to be trebled pursuant to the provisions of Lanham Act § 35, 15 U.S.C. § 1117;

7. That Vulcan have and recover of Rogue its actual damages sustained by reason of Rogue's unfair and deceptive trade practices and unfair methods of competition in violation of N.C.G.S. § 75-1.1 in such amounts as may be proved at trial, such damages to be trebled pursuant to the provisions of N.C.G.S. § 75-16;

8. That Vulcan have and recover of Rogue its damages sustained by reason of Rogue's acts of common law trademark infringement and unfair competition in such amounts as may be proved at trial, together with punitive damages pursuant to N.C.G.S. § 1D-15 in such amount as may be adequate to punish Rogue's willful and wanton conduct and to deter such conduct on the part of others;

9. That the Court deem this to be an exceptional case, and award to Vulcan its reasonable attorney fees incurred in prosecuting its claims under the Lanham Act, pursuant to the provisions of Lanham Act § 35, 15 U.S.C. § 1117;

10. That Vulcan have and recover its reasonable attorney fees incurred in prosecuting its claim for unfair and deceptive trade practices pursuant to N.C.G.S. § 75-16.1;

11. That all costs of this action be assessed against Rogue;

12. That Vulcan have a trial by jury of all issues properly so triable; and

13. That Vulcan have such other and further relief as the Court may deem just and proper.

Dated: January 26, 2023

/s/Rodrick J. Enns
Rodrick J. Enns
N.C. State Bar No. 12151
ENNS & ARCHER LLP
939 Burke Street
Winston-Salem, NC  27101
Telephone:  (336) 723-5180
Facsimile:  (336) 723-5181
E-mail:  renns@ennsandarcher.com

*Attorneys for Plaintiff Advanced Fitness Concepts, Inc. d/b/a Vulcan Strength Training Systems*